UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK DAVID HOLT,<br><br>                    Petitioner,<br><br>vs.<br><br>WARDEN,<br><br>                    Respondent. | 4:20-CV-04064-RAL<br><br><br>**OPINION AND ORDER GRANTING<br>MOTION TO DISMISS** |

       Petitioner Mark David Holt filed a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Holt is an inmate at the Yankton Federal Prison Camp (Yankton FPC) in Yankton, South Dakota. Doc. 1 at 1. In his § 2241 petition, Holt seeks two forms of relief under the First Step Act. Respondent Warden, by and through the United States Attorney's Office, filed a motion to dismiss Holt's habeas petition asserting lack of subject matter jurisdiction and failure to state a claim. Doc. 19; Doc. 20 at 1. Holt opposed dismissal and simultaneously requested this Court to conduct an in camera review and issue a protective order requiring the United States to redact personal information from its filings. Doc. 24 at 1–2. A second response by Holt opposing the Warden's motion was filed on March 15, 2021. Doc. 25. The Warden opposed Holt's motion for a protective order, arguing that the briefing complied with local rules regarding confidentiality of personal data. Doc. 26.

       On April 2, 2021, Holt supplemented his petition and briefs to address a recent case from the United States District Court for the District of New Jersey, specifically, Hare v. Ortiz, Civ. No. 20-14093 (RMB), 2021 WL 391280 (D.N.J. Feb. 4, 2021). Doc. 28. The Warden was permitted to supplement the record with additional briefing based on a decision by the United States District

Court for the District of Illinois in Coleman v. FCI Pekin, Case No. 20-CV-1406-JES (C.D. Ill. Mar. 2, 2021). Docs. 30, 31. For the following reasons, this Court grants the Warden's motion for dismissal.

I. **Background**

Holt is serving a 120-month sentence of imprisonment for wire fraud in violation of 18 U.S.C. § 1343. Doc. 1 at 3; Doc. 21 ¶ 4. Holt has a projected release date of March 15, 2022. Doc. 21-1 at 1. He is eligible for home detention on September 15, 2021. Doc. 21-1 at 1. Holt's sentence was imposed on August 14, 2014, in the United States District Court for the District of Minnesota. Doc. 21-1 at 1.

On August 13, 2019, Holt submitted a request to the Warden requesting a calculation of his earned time credits under the First Step Act. Doc. 1-1 at 55. On August 19, 2019, the Warden responded that the Bureau of Prisons (BOP) had not yet issued guidance on the implementation of various aspects of the First Step Act, including calculation of earned time credits. Doc. 1-1 at 57. Consequently, no calculation was made. See Doc. 1-1 at 57. Holt appealed to the Regional Director, who issued a response on September 16, 2019. Doc. 1-1 at 58. The Regional Director advised that legislation was being reviewed and that the BOP would be implementing all necessary steps to comply with the legislation. Doc. 1-1 at 58. Holt next appealed to the Central Office, the final step in the administrative remedy process. See Doc. 1-1 at 60. On December 26, 2019, the Central Office issued a response advising Holt of the "good conduct time" credits he had earned to date, but did not address Holt's question regarding earned time credits under the First Step Act. Doc. 1-1 at 59. On February 5, 2020, Holt made another request within Yankton FPC for a calculation of his programming credits under the First Step Act. Doc. 1-1 at 62. The next day, he received a response indicating "[w]e are awaiting guidance on calculation of FSA time credit

days." Doc. 1-1 at 62.

On April 15, 2020, Holt filed the instant § 2241 habeas petition seeking relief under the CARES Act of 2020 and the First Step Act. Doc. 1 at 5; Doc. 1-1 at 2–3. First, Holt seeks to require the BOP to release him to home confinement due to the COVID-19 pandemic.[1] Doc. 1 at 5. Second, Holt requests this Court to require the BOP to calculate the earned time credits he has accumulated under the First Step Act. Doc. 1 at 5.

## II.     The CARES Act of 2020

The BOP has authority to allow inmates to serve a portion of the final months of their sentence on "prerelease custody" or "home confinement." See 18 U.S.C. §§ 3624(c)(1), (2). The BOP may "place prisoners with lower risk levels and lower needs on home confinement" for up to 6 months or 10 percent of their term, whichever is shorter. Id. § 3624(c)(2). In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Public Law No. 116-136, 134 Stat. 281 (2020). Section 12003(b)(2) of the Act, expands the BOP's discretion to increase the maximum amount of time that a prisoner may spend in home confinement:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the function of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . .

Id. § 12003(b)(2).

The United States Attorney General issued a Memorandum dated March 26, 2020,

---

[1] Holt has not submitted a motion for compassionate release to this Court under 18 U.S.C. § 3582(c)(1)(A)(i). In any event, a motion for compassionate release must be made to the court that imposed sentence. See 18 U.S.C. § 3582; see also Vaughan v. United States, No. 2:20-CV-00221-BSM-JTR, 2020 WL 7861725, at *1 (E.D. Ark. Dec. 31, 2020) (finding no jurisdiction over compassionate release request because "only the sentencing court can modify the sentence it imposed").

prioritizing home confinement as an appropriate response to the COVID-19 pandemic. See Memorandum from then U.S. Attorney General William Barr to the Director of the BOP, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020) available at https://www.bop.gov/coronavirus/faq.jsp (last checked May 13, 2021). In the memo, the Attorney General provided guidance on assessing which inmates should be granted home confinement and identified a non-exhaustive list of factors for the BOP to consider. Id. On April 3, 2020, the Attorney General issued a memorandum specifically exercising the emergency authority under the CARES Act, stating:

> [T]he CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that . . . you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities[.]

See Memorandum from then U.S. Attorney General William Barr to the Director of the BOP, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020) available at https://www.bop.gov/coronavirus/faq.jsp (last checked May 13, 2021).

Holt is among a growing number of inmates who have sought judicial intervention into the process implemented by the BOP to determine eligibility for home confinement under the CARES Act. However, as a growing number of courts have held, the CARES Act authorizes the BOP—not the courts—to expand the use of home confinement. See United States v. Valure, No. 4:13-CR-00266 KGB, 2020 WL 6788008, at *2 (E.D. Ark. Nov. 18, 2020) (holding that courts do no not have power to grant relief under section 12003 of the CARES Act); Haymore v. Joseph, No. 3:20CV5518-MCR/MAF, 2020 WL 6587279, at *7 (N.D. Fla. Sept. 21, 2020) (report and recommendation) ("The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement.") (quotations omitted); United States v. Williams,

4

No. 3:18-CR-2, 2020 WL 3343009, at *2 (D.N.D. June 18, 2020) (holding that court had no jurisdiction to consider prisoner's request for transfer to home confinement); United States v. Blaylock, No. 1:12-CR-10010-001, 2020 WL 4344915, at *4 (W.D. Ark. June 1, 2020) (holding that court cannot review or reverse BOP's decision to deny home confinement); United States v. Fulton, No. 16-40059-02-DDC, 2020 WL 2395219, at *1–2 (D. Kan. May 12, 2020) (concluding court lacks jurisdiction to order home confinement under the CARES Act); United States v. Brown, No. 12-CR-172(3) (SRN), 2020 WL 1922567, at *2–3 (D. Minn. Apr. 21, 2020) (holding that BOP has exclusive authority to determine the placement of prisoners); United States v. Cruz, 455 F. Supp. 3d. 154, 159 (M.D. Penn. Apr. 17, 2020) (holding that determination of which inmates qualify for home confinement under the CARES act is with the BOP).

Here, Holt couches his request for home confinement in the context of a § 2241 petition. Doc. 1 at 5; Doc. 1-1 at 2–3. A district court has authority to grant a writ of habeas corpus when a prisoner is "in custody in violation of the constitution or laws or treaties of the United States," among other reasons. 28 U.S.C. § 2241(c)(3). This Court concludes Holt is not being held in violation of federal law. It is "well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." Brown, 2020 WL 1922567, at *3 (citing Meachum v. Fano, 427 U.S. 215, 224 (1976) (stating the "Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison) and Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996) (stating "there is no liberty interest in assignment to any particular prison")). It follows that a prisoner does not have a constitutional right to be placed in home confinement. See id.

Neither is Holt being held in violation of the laws of the United States. The BOP has broad authority to determine where prisoners serve their sentence. See 18 U.S.C. § 3621(b) ("The Bureau

of Prisons shall designate the place of the prisoner's imprisonment"); 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."). And as explained above, the CARES Act made the BOP exclusively responsible for determining which prisoners are eligible for home confinement.

Finally, to the extent Holt seeks to challenge the conditions of his confinement during the COVID-19 pandemic through a § 2241 petition, such challenge must fail. The Eighth Circuit has held that a prisoner may not assert a constitutional claim relating to the conditions of his confinement in a habeas petition. Spencer v. Haynes, 774 F.3d 467, 470 (8th Cir. 2014). "[A] habeas petition is not the proper claim to remedy" an alleged injury arising out of the conditions of confinement in the Eighth Circuit. Id. (noting a split in the circuits as to the propriety of using a writ of habeas corpus to review the conditions of confinement as distinct from the fact or length of confinement). The proper mechanism to challenge such conditions in the Eighth Circuit is a *Bivens* or § 1983 claim. Id.; see also Malcom v. Starr, Civ. No. 20-2503 (MJD/LIB), 2021 WL 931213, at *3 (D. Minn. Mar. 11, 2021) (dismissing § 2241 habeas action of six petitioners challenging conditions of confinement arising from COVID-19 pandemic).

### III. First Step Act

Holt's § 2241 petition also involves the earned time credit portion of the First Step Act. Doc. 1 at 5. Holt seeks an order requiring the BOP to calculate the earned time credits he claims to have accumulated. Doc. 1 at 5; Doc. 1-1 at 20–22.

The First Step Act ("FSA"), Public Law No. 115-391, 132 Stat. 5195, was enacted on December 21, 2018, and brought about a number of prison and sentencing reforms. One of the reforms required the Attorney General to create a "risk and needs assessment system" to individually classify, identify, and provide appropriate evidence-based recidivism reduction

programs or productive activities to prisoners. See 18 U.S.C. § 3632(a). Congress directed that the risk and needs assessment system (System) be used to "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities[.]" Id. § 3632(a)(6). The types of incentives and rewards available to prisoners for participation in programming and productive activities include phone and visitation privileges, transfers to facilities closer to home, increased commissary spending, and time credits. Id. §§ 3632(d)(1)–(4). The system is also used to "determine when a prisoner is ready to transfer into prerelease custody or supervised release[.]" Id. § 3632(a)(7).

Under the FSA, time credits may be earned by eligible prisoners who successfully complete "evidence-based recidivism reduction programming" or "productive activities." 18 U.S.C. § 3632(d)(4)(A). Time credits are earned at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." Id. § 3632(d)(4)(A)(i). Certain minimum and low risk prisoners are eligible to earn an additional 5 days of time for every 30 days of successful participation. Id. § 3632(d)(4)(A)(ii). Not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits. See id. §§ 3635(3), (5). Limits are also placed on when those credits may be earned. "A prisoner may not earn time credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed" before the enactment of the FSA or prior to commencement of the prisoner's sentence. Id. § 3632(d)(4)(B).

To effectively further the purposes of the law, the FSA set deadlines for completing various milestones toward fully implementing the prison and sentencing reforms. The FSA required that within 210 days of enactment, the Attorney General had to establish a comprehensive "risk and needs assessment system" to assess and determine the individual risks and needs of each prisoner.

7

See 18 U.S.C. § 3632(a). The United States Department of Justice met this goal on July 19, 2019 when the system was announced. See Press Release 19-784, U.S. Dep't of Justice, Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk and Needs Assessment System available at https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last checked May 13, 2021).

The next milestone, due 180 days thereafter, was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). Press Release 20-37, U.S. Dep't of Justice, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last checked May 13, 2021).

The final milestone, which commenced after the initial risk assessments for all prisoners were completed, is a 2-year phase-in period for providing evidence-based recidivism reduction programming and productive activities. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities to *all* prisoners. Id. § 3621(h)(2) (emphasis added). During the phase-in period, the BOP was instructed to provide priority for programming to prisoners based on his or her proximity to release date. Id. § 3621(h)(3). Congress also gave the BOP authority to use the incentives and rewards program for prisoners who successfully participate in approved programming and productive activities during this time. Id. § 3621(h)(4). Section 3621(h)(4) provides:

> **(4) Preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives.**—Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

Id.

### IV. Subject Matter Jurisdiction

The Warden argues that Holt's petition should be dismissed because his request for relief is premature. Doc. 20 at 13–16. According to the Warden, there is no justiciable case or controversy as required by Article III of the United States Constitution because the deadline for implementing the incentives component of the Risk and Needs Assessment System has not passed. Doc. 20 at 13. The Warden argues that the deadline for the BOP's implementation of the incentives component for all prisoners is January 15, 2022, and that the BOP "is under no obligation to provide the incentives component of the Risk and Needs Assessment System prior to January 15, 2022." Doc. 20 at 13. The Warden further argues that Congress accorded discretion to the BOP as to when it would implement the incentives component during the phase-in period, and thus that no justiciable case or controversy results from the BOP's choice not to offer the FSA time credits prior to January 15, 2022. Doc. 20 at 14–15.

Section 3621(h)(4), in pertinent part, provides that during the two-year phase-in period, the BOP "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in [18 U.S.C. § 3632(d)]." See 18 U.S.C. § 3621(h)(4). Among those incentives are the earned time credits. See 18 U.S.C. § 3632(d)(4). The Warden argues for a plain language interpretation of the statute, contending that the use of "may" affords BOP the discretion to employ or delay incentives during the phase-in period. Doc. 20 at 14–20.

Several courts across the nation have considered the extent of the BOP's authority to delay

9

implementation of the FSA's earned time credits during the phase-in period. A district court in the District of New Jersey was one of the first to address the issue in Goodman v. Ortiz, Civ. No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). In Goodman, the court acknowledged that the statute does not explicitly provide a date when the BOP must apply a prisoner's earned credits from participation in recidivism reduction programs. Id. at *6. Nevertheless, relying on the ordinary meaning of "phase-in" combined with the FSA's statutory framework in § 3621(h), the court in Goodman concluded that "the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners who release dates are nearer." Id. The court found "no evidence in the statutory framework for delaying application of incentives earned by all prisoners during the phase-in program until January 15, 2022, the final date when BOP must complete the phase-in[.]" Id. This position was reaffirmed by the district court in Hare, 2021 WL 391280.

The majority of courts that have addressed the issue arrive at a contrary conclusion. See Cohen v. United States, 20-CV-10833 (JGK), 2021 WL 1549917, at * 3 (S.D.N.Y. Apr. 20, 2021) (stating the "overwhelming majority of courts to have considered this issue have agreed with the Government's view"); Fleming v. Joseph, No. 3:20CV5990-LC-HTC, 2021 WL 1669361, at *4 (N.D. Fla. Apr. 7, 2021) (report and recommendation) (concluding petitioner's claim to apply time credits was premature because the two-year phase date had not expired); Kennedy-Robey v. FCI Pekin, No. 20-CV-1371, 2021 WL 797516, at *3 (C.D. Ill. Mar. 2, 2021) ("The use of the word 'may' indicates that, while it is permissible for the BOP to award time credits under the statute at any time after the date of enactment, the BOP is not *required* to do so.") (emphasis in original); Coleman, No. 20-CV-1406-JES (same); Hand v. Barr, No. 1:20-CV-00348-SAB-HC, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021) (report and recommendation) (finding Goodman

10

distinguishable).

This Court agrees with the majority position. As a general rule of statutory construction, "may" is permissive, whereas "shall" is mandatory. Anderson v. Yungkau, 329 U.S. 482, 485 (1947); Braswell v. City of El Dorado, 187 F.3d 954, 958–59 (8th Cir. 1999). This Court cannot read the word "may" in 18 U.S.C. § 3621(h)(4) to mean "shall," particularly when the word "shall" is used throughout the same subsection. See 18 U.S.C. §§ 3621(h)(1), (h)(2), (h)(3), (h)(5). Other courts have recognized that the statutory text presumes Congress encouraged the early use of the statutory incentives. See Kennedy-Robey, 2021 WL 797516, at *4; Goodman, 2020 WL 5015613, at *6. This Court agrees. Although the BOP is evading the spirit of a phase-in of FSA earned time credits, the language Congress chose gives the BOP discretion to determine whether to implement the incentives component during the phase-in period. See 18 U.S.C. § 3621(h)(4); see also Kennedy-Robey, 2021 WL 797516, at *4 ("If immediate implementation were mandated, Congress would have used the word 'shall[.]'"). Consequently, this Court concludes § 3621(h)(4) makes implementation of the FSA earned time credits permissible during the two-year phase-in period, not mandatory.

Because the deadline for the BOP to complete the phase-in period is January 15, 2022, Holt's petition seeking a calculation of his earned time credits to apply toward prerelease custody or supervised release is premature. Though the BOP could, in its discretion, apply earned time credits before January 15, 2022, this Court cannot read the FSA to compel the BOP to do so. For these reasons, Holt's petition must be dismissed. This Court concludes that Holt does not have standing at this time to demand the BOP calculate and apply any time credits he may have earned toward prerelease custody or supervised release.

## V.     Conclusion

The Warden's motion to dismiss is granted for lack of subject matter jurisdiction. Petitioner's claim for release to home confinement under the CARES Act and claim to compel a calculation of earned time credits under the First Step Act must be dismissed.

Therefore, it is hereby

ORDERED that Respondent's motion to dismiss, Doc. 19, is granted. It is further

ORDERED that Petitioner's motion for in camera review and protective order, Doc. 24, is denied. It is finally

ORDERED that Petitioner's writ for habeas corpus under 28 U.S.C. § 2241, Doc. 1, is dismissed without prejudice.

DATED this 13th day of May, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE